UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 22 2005
CLERK, U.S. DISTRICT COURT
By _____
       Deputy

| | |
|---|---|
| BEATRICE A. PERRERO, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:04-CV-277-C |
| § | |
| JO ANNE B. BARNHART, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION

Plaintiff Beatrice A. Perrero seeks judicial review of a decision of the Commissioner of Social Security in which her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) were denied. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

I.   **Statement of the Case**

Perrero claimed in her applications for DIB and SSI that she was no longer able to work because of pain and stiffness in her left leg and knee. (Tr. 18, 23, 63.) At a hearing before an Administrative Law Judge (ALJ) she testified that she quit working because of problems with her back and legs. (Tr. 221.) In response to questioning by her representative, she alleged that she had pain in her back and neck that radiated to her shoulders, hips, and

legs and that her physicians had advised against surgery, told her she would "have to live with [the] pain," and recommended pain management. (Tr. 231.)

The ALJ denied Perrero's applications for benefits at the fifth step of the sequential disability evaluation process.[1] He acknowledged that Perrero had probable degenerative changes in her left knee and degenerative changes in the lumbar, thoracic, and cervical spine. (Tr. 15.) Despite these impairments, he determined that she was capable of performing work at the sedentary exertional level. (Tr. 15.) He then determined at the fourth step of the sequential evaluation process that she could not perform her past work as a cashier because that work was performed at the light exertional level. (Tr. 16.) Proceeding to the fifth step of the sequential evaluation process he determined, based on vocational expert testimony, that she was capable of working as a food checker. (*Id.*) Finally, he noted that Rule 201.03 of the Commissioner's Medical-Vocational Guidelines directed a conclusion that she was not disabled. (Tr. 17.) The Appeals Council denied Perrero's request for review and the ALJ's decision became the Commissioner's final decision for purposes of her appeal to the court. (Tr. 3-5); *see* 20 C.F.R. § 404.981 (2004).

Perrero contests the Commissioner's denial of disability on two grounds. First, she contends the ALJ failed to accord sufficient weight to opinions and evidence offered by her

---

[1] In evaluating disability, the Commissioner conducts a five-step sequential evaluation process under which it is determined whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals a listed impairment in Appendix I of the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing alternative work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920 (2004).

physicians. Second, she contends that the ALJ erred at the fifth step of the sequential disability evaluation process. She argues that the ALJ failed to determine that she possessed highly marketable skills and failed to apply Rule 201.02 in the Medical-Vocational Guidelines to determine whether she was disabled.

## II.    Standard of Review

This court's review of the Commissioner's decision is limited. The court's sole role is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citation omitted). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision and if the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Id.*

## III.    Discussion

### A.    *The ALJ's evaluation of the medical evidence*

The ALJ must consider all the medical evidence and opinions in a claimant's case record. 20 C.F.R. § 404.1527(b). As a general rule, the opinions of the claimant's treating physician who is familiar with the claimant's impairments, treatments, and responses, should be accorded great weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995)). However, opinions from treating physicians are not conclusive; responsibility for determining a claimant's

disability status lies with the Commissioner. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).

Thus, when good cause is shown, an ALJ may assign little or no weight to a treating physician's opinion. *Greenspan*, 38 F.3d at 237. The good cause exception "may permit an ALJ to discount the weight of a treating physician's opinion relative to that of other experts when that opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456 (citations omitted). In assessing the weight to accord a treating physician's opinion and before declining to give controlling weight to such an opinion, the ALJ must consider the factors set forth under 20 C.F.R. §§ 404.1527(d) and 416.927(d).

Citing the foregoing rules of law, Perrero argues that the ALJ failed to give weight to medical evidence that establishes that she suffers from significant limitations and physical problems that prevent her from performing sedentary work. She points to evidence provided by Nevan G. Baldwin, M.D, and Frank Quattromani, M.D.

Dr. Baldwin, a neurologist, examined Perrero on referral and saw her on two occasions thereafter. (Tr. 208-12.) Among his findings and those that Perrero urges as significant are that she was unable to lift her right arm to 90 degrees because of right shoulder pain, that she experienced pain in her right shoulder when her arm was extended to 30 degrees with her thumbs pointing inward, and that a Magnetic Resonance Imaging (MRI) study showed significant spinal stenosis at the L4-5 level. (Tr. 208-10.) After viewing the results of a bone scan, Dr. Baldwin recommended against surgery based on his belief that it

was unlikely that surgery would improve her pain; he recommended a referral to a pain management clinic. (Tr. 212.)

Dr. Quattromani dictated the results of a bone scan Perrero underwent on February 10, 2004, and stated in part:

> The patient's young age is 60 years and the degree of degenerative changes of the lumbar spine is significant. Also, osteoporosis appears to be moderately significant. The bone scan matches those skeletal changes, particularly in the lumbar spine where areas of increased isotope accumulation was seen particularly at L3-4 where there is particularly significant degenerative disease. The remainder of the skeleton shows some degenerative changes in both feet, minimal changes in both knees and both shoulders, right greater than left. Cervical spine also matches the bone scan for degenerative changes.

(Tr. 198.)

As an initial point, the ALJ is required to undertake the treating physician analysis only with respect to the opinions of treating physicians. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician is a physician who has provided the claimant with medical treatment or evaluation and who has an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. Dr. Quattromani was certainly not a treating physician. He never examined Perrero or provided her with treatment. In fact, it appears that he never met her; rather, he merely dictated the results of the bone scan from February 10, 2004. (Tr. 198.)

Further, the ALJ did not run afoul of the law regarding the evaluation of medical evidence. The ALJ's analysis demonstrates that he considered all the medical evidence in the record, including the evidence Perrero cites. The ALJ specifically cited to

findings from Dr. Baldwin's examination (Tr. 11-12) and acknowledged that Perrero had degenerative changes in her lumbar, thoracic, and cervical spine, an acknowledgment that corresponds with Dr. Quattromani's interpretation of Perrero's bone scan. (Tr. 11.) Given the ALJ's acknowledgment of these impairments, it cannot be said that he rejected the evidence from Drs. Baldwin and Quattromani.

The ALJ is given the responsibility to weigh the evidence and his decisions in this regard are upheld if supported by substantial evidence. *Greenspan*, 38 F.3d at 238. It is only in the absence of competing first-hand medical evidence that the ALJ must evaluate treating physician opinion under the regulatory factors. *See Newton*, 209 F.3d at 458. In this case, there was first-hand medical evidence from examining physician Dwight D. Hood, M.D., that the ALJ found significant. The ALJ noted that Dr. Hood found significant inconsistencies between Perrero's subjective allegations and the physical examination. (Tr. 12; *see* 164.) Dr. Hood also reported the absence of joint deformities, bone or tissue destruction, muscular atrophy, circulatory deficits, instability, and disorganization of motor function. (Tr. 165.) This evidence, along with other evidence from Perrero's physicians, demonstrates that her impairments were not totally debilitating.

Although the evidence from Drs. Baldwin and Quattromani may demonstrate that Perrero suffers from physical limitations, the diagnoses provided by the physicians does not conclusively establish disability and neither of the physicians indicated as such. In fact, Dr. Baldwin noted that Perrero did not appear to be in acute distress, that her cervical range of motion was accomplished without difficulty, that her upper and lower extremity strength

was 5/5, and that she was able to raise her legs to 90 degrees bilaterally without pain. (Tr. 208-09.) Based on the foregoing, there is substantial evidence to support the ALJ's residual functional capacity finding; therefore, it must be affirmed. *See Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citations omitted).

B.  *The ALJ's step five findings*

Perrero's arguments regarding the ALJ's step five findings concern her age. The Commissioner's regulations direct that a claimant's age may affect his or her ability to adjust to other work. 20 C.F.R. § 404.1563(a). Thus, the Commissioner characterizes claimants age 55 or older to be "advanced age," an age that significantly affects the ability to adjust to other work. 20 C.F.R. § 404.1563(e). Making an adjustment to other work depends, in large part, on the ability to transfer and apply skills a claimant used in his previous work to other work. 20 C.F.R. § 404.1569(d)(1). The regulations direct that a claimant who is of advanced age and can perform sedentary work can make an adjustment to other work only if the work is so similar to his past work that he would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, and the industry. 20 C.F.R. § 404.1569(d)(4).

Citing *Queen v. Apfel*, 168 F.3d 152 (5th Cir. 1999), Perrero argues that because she was 60 years old on the date the ALJ issued his decision, he was required to find that she had highly marketable skills before determining that she could perform sedentary work. In *Queen*, the Fifth Circuit Court of Appeals reversed and remanded a decision in which the ALJ failed to determine, as the regulations then required, that the 64-year-old

claimant had highly marketable skills before concluding that he could perform jobs at the light exertional level. *Queen*, 168 F.3d at 155-56.

The holding in *Queen* is inapplicable to Perrero's case because the Commissioner revised the regulation that required a finding regarding marketability of skills. Clarification of "Age" as a Vocational Factor, 65 Fed. Reg. 17994, 17996-97 (April 6, 2000) (codified at 20 C.F.R. §§ 4041568(d)(4), 416.968(d)(4)). Under the revised regulation, the Commissioner no longer considers whether a claimant approaching retirement age has highly marketable skills; the consideration now is whether the claimant's skills are transferable as discussed above. *Id.*; 20 C.F.R. 404.1565(d)(4).

In this case, the ALJ complied with the revised regulation and determined, based on the testimony of a vocational expert, that the skills Perrero acquired at her past work as a cashier were transferable to the job of food checker because the two jobs were similar and, with the exception of a different work setting, would require no vocational adjustment. (Tr. 16-17, 241-42.)

The ALJ then turned to the Medical-Vocational Guidelines[2] and determined that Rule 201.03 directed a finding that Perrero was not disabled. Perrero argues that the

---

[2] Located in the regulations at appendix 2 of part 404, subpart P, the Medical-Vocational Guidelines or "Grid Rules" are utilized at the fifth step of the sequential disability evaluation process to determine whether the claimant can perform jobs that exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); 20 C.F.R. pt. 404, subpt. P. app. 2. The Grid Rules provide a systematic approach wherein various vocational factors are applied to the different levels of residual functional capacity to make this determination. The regulations direct that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P. app. 2, § 200.00.

ALJ should have applied Rule 201.02 rather than Rule 201.03. Rule 201.02 directs a finding of disability in situations in which the claimant can perform sedentary work, is of advanced age, has a limited or lesser education, and has no transferable skills. 20 C.F.R. pt. 404, subpt. P. app. 2, § 201.02. This is not the situation in Perrero's case. Again, the ALJ found, based on the testimony of a vocational expert, that Perrero's skills from her past job as a cashier were transferable to the job of food checker and that working as a food checker would require little or no vocational adjustment for Perrero. (Tr. 16-17, 241-42.) The ALJ applied Rule 201.03, which directs a finding of no disability in cases in which the claimant can perform sedentary work, is of advanced age, has a limited or lesser education, and has transferable skills. 20 C.F.R. pt. 404, subpt. P. app. 2, § 201.03. Perrero's vocational profile coincides with the criteria of Rule 201.03. Therefore, the ALJ applied the proper Grid Rule to determine that she was not disabled.

## IV. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Perrero's case with prejudice.

## V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall

bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____June 22_____, 2005.

_____
NANCY M. KOENIG
United States Magistrate Judge